UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LEQUANTE H., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:23-cv-00924 <br><br> District Judge Dale A. Kimball <br><br> Magistrate Judge Daphne A. Oberg |

Lequante H.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Ms. H.'s application determined she did not qualify as disabled.[3] Ms. H. argues the ALJ erred by failing to reconcile a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles as to one of the three jobs the ALJ found she could perform.[4] However, any error by the ALJ in relying on this job was harmless because the other two, unchallenged jobs exist in significant numbers in the national economy.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by her first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. ("Tr.") 15–28, Doc. No. 11.)

[4] (*See* Opening Br. 9–15, Doc. No. 12.)

1

Therefore, the undersigned[5] recommends the district judge affirm the Commissioner's decision.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5) she has the residual functional capacity to perform other work existing in significant numbers in the national economy, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. H. applied for disability insurance benefits under Title II of the Social Security Act[18] in July 2022, alleging disability beginning in December 2021.[19] After a hearing, the ALJ issued a decision in August 2023 finding Ms. H. not disabled.[20]

At step two of the sequential evaluation, the ALJ found Ms. H. had the severe impairments of "migraine without aura, Ehlers-Danlos syndrome, non-diabetic peripheral neuropathy, right shoulder degenerative joint disease, bilateral knee osteoarthritis, myofascial pain syndrome, post-traumatic stress disorder (PTSD) and depression," and nonsevere impairments of carpal tunnel syndrome, prediabetes, sleep apnea,

---

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 15, 287–93.)

[20] (Tr. 15–28.)

microvascular disease, and irritable bowel syndrome with constipation.[21]  At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[22]

The ALJ then found Ms. H. had the residual functional capacity ("RFC")[23] to perform sedentary work with limitations.[24]  As relevant here, the ALJ found Ms. H. was limited to "simple work" due to physical pain, fatigue, and "mental limits."[25]  At step four, the ALJ found Ms. H. unable to perform her past work.[26]  But at step five, after considering the testimony of a vocational expert, the ALJ found Ms. H. could perform other jobs existing in significant numbers in the national economy, including final assembler, touchup screener, and document preparer.[27]  Therefore, the ALJ found Ms. H. not disabled and denied her claim.[28]

---

[21] (Tr. 18.)

[22] (Tr. 18–20.)

[23] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 1996 SSR LEXIS 5, at *5.  The ALJ considers all relevant medical and other evidence in the record.  *See* 20 C.F.R. § 404.1545(a)(3).

[24] (Tr. 20.)

[25] (*Id.*)

[26] (Tr. 26–27.)

[27] (Tr. 27–28.)

[28] (Tr. 28.)

This decision became the Commissioner's final decision when the Appeals Council denied Ms. H.'s request for review.[29]

## ANALYSIS

Ms. H. argues the ALJ failed to properly reconcile a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") as to the document preparer job.[30] In response, the Commissioner argues any error was harmless because the ALJ found Ms. H. capable of performing two other jobs—final assembler and touchup screener—which exist in significant numbers in the national economy.[31]

An ALJ may not rely on evidence from a vocational expert to support a finding of nondisability at step five unless the ALJ asks the expert "how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit[s] a reasonable explanation for any discrepancy on this point."[32] In other words, if the vocational expert's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict."[33] The

---

[29] (Tr. 1–4.)

[30] (*See* Opening Br. 9–14, Doc. No. 12; *see also* Reply Br. 2, Doc. No. 21 (conceding the final assembler and touchup screener jobs were consistent with her assessed RFC, but arguing the document preparer job was inconsistent with her RFC).)

[31] (*See* Answer Br. 10, Doc. No. 18.)

[32] *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

[33] SSR 00-4p, 2000 SSR LEXIS 8, at *9 (Dec. 4, 2000). SSR 00-4p was rescinded effective January 6, 2025. *See* SSR 24-3p, 2024 WL 5256890 (Dec. 6, 2024) (rescinding and replacing SSR 00-4p). However, a reviewing court should apply SSR 00-4p if it remained in effect at the time of the ALJ's decision, as was the case here. *See id.* at *2 n.1.

6

ALJ must then resolve the conflict before relying on the vocational expert's testimony to support a finding of nondisability, and must "explain in the determination or decision how he or she resolved the conflict."[34]

Here, the vocational expert testified a person with Ms. H.'s RFC could perform jobs including final assembler, touchup screener, and document preparer.[35] The ALJ asked the expert whether her testimony was consistent with the DOT.[36] The expert responded that it was, except for information not addressed in the DOT related to reaching, climbing, and interacting with others—which she based on her professional experience.[37] The expert also testified the document preparer job described in the DOT was a microfilming job that is now primarily performed as a scanning job, but the DOT was "accurate in terms of the exertion and skill level."[38] The ALJ found the expert's testimony consistent with the DOT, and noted that where the DOT was silent, the expert's testimony was based on her professional experience.[39]

Ms. H. contends the vocational expert's testimony was inconsistent with the DOT as to the document preparer job, because the DOT requires level-three reasoning ability

---

[34] *Id.*; *see also Haddock*, 196 F.3d at 1090–91.

[35] (*See* Tr. 27–28, 61–62.)

[36] (Tr. 62.)

[37] (*Id.*)

[38] (*Id.*)

[39] (Tr. 28.)

for this job.[40]  Ms. H. contends level-three reasoning is inconsistent with the limitation to "simple work" in her RFC.[41]  In support of this, Ms. H. relies on the Tenth Circuit's unpublished decision in *Paulek v. Colvin*.[42]  In *Paulek*, the court found a vocational expert's testimony inconsistent with the DOT where the expert identified jobs with level-three reasoning for a claimant limited to "understanding, remembering, and carrying out simple instructions."[43]  Ms. H. argues the ALJ failed to properly reconcile this same conflict in her case.[44]

It is unnecessary to decide whether the ALJ erred as to the document preparer job.  Even if the ALJ erred, an ALJ's erroneous inclusion of one or more jobs is harmless where there remains a significant number of other jobs in the national economy which the claimant can perform.[45]  Here, the ALJ also found Ms. H. capable of

---

[40] (*See* Opening Br. 10–13, Doc. No. 12); *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT") 249.587-018, 1991 WL 672349 (document preparer).  The final assembler and touchup screener jobs require only level-one and level-two reasoning, respectively.  *See* DOT 713.687-018, 1991 WL 679271 (final assembler); DOT 726.684-110, 1991 WL 679616 (touchup screener).

[41] (*See* Opening Br. 11–13, Doc. No. 12.)  In her opening brief, Ms. H. appears to suggest the level-two reasoning ability required by the touchup screener job may also be inconsistent with the "simple work" limitation.  (*See id.* at 12–13 (citing *Stanton v. Comm'r*, 899 F.3d 555, 558, 560 (8th Cir. 2018)).)  However, she concedes in her reply that the requirements of the final assembler and touchup screener jobs are consistent with her assessed RFC.  (*See* Reply Br. 2, Doc. No. 21.)

[42] 662 F. App'x 588 (10th Cir. 2016) (unpublished).

[43] *Id.* at 594; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding a mental RFC limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning").

[44] (*See* Opening Br. 13–14, Doc. No. 12.)

[45] *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

working as a final assembler (25,000 jobs nationally) and a touchup screener (40,000 jobs nationally).[46]

Ms. H. does not challenge the ALJ's finding that she could work as a final assembler and a touchup screener.[47]  However, she argues the combined number of these two jobs (65,000) is insufficient to constitute a "significant number" as a matter of law, and the case must be remanded for the ALJ to make findings on this issue.[48]

The Tenth Circuit has declined to draw a "bright line establishing the number of jobs necessary to constitute a 'significant number.'"[49]  But it has noted this number "appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless

---

[46] (*See* Tr. 27–28.)

[47] (*See* Reply Br. 2, Doc. No. 21 (conceding the final assembler and touchup screener jobs are consistent with her assessed RFC).)

[48] (*See id.* at 2–4.)

[49] *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992); *see also Evans*, 640 F. App'x at 736 ("[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant . . . .").

error."[50]  Under this framework, numerous courts have found harmless error based on fewer than 65,000 jobs (the number available here).[51]

Consistent with these cases, 65,000 jobs constitutes a significant number for purposes of harmless error.  Therefore, any error by the ALJ in relying on the document preparer job was harmless.  The ALJ's conclusion that Ms. H. could perform other work existing in significant numbers in the national economy is supported by substantial evidence, based on the ALJ's unchallenged finding that Ms. H. could work as a final assembler and a touchup screener.

---

[50] *Evans*, 640 F. App'x at 736; *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (finding harmless error where 152,000 jobs were available nationally); *Allen v. Barnhart*, 357 F.3d 1140, 1144–45 (10th Cir. 2004) (finding one hundred jobs statewide insufficient to apply harmless error).  The Tenth Circuit has also affirmed findings by ALJs that jobs existed in significant numbers nationally based on 11,000 available jobs, *see Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished), and 24,900 available jobs, *see Lynn v. Astrue*, 637 F. App'x 495, 499 (10th Cir. 2016) (unpublished).

[51] *See Wendy F. v. Kijakazi*, No. 22-cv-00021, 2023 U.S. Dist. LEXIS 48978, at *12 (D. Utah Mar. 21, 2023) (unpublished) (56,000 jobs); *Collier v. Kijakazi*, No. CIV-21-187, 2022 U.S. Dist. LEXIS 171410, at *10–11 (E.D. Okla. Sept. 22, 2022) (unpublished) (30,603 jobs); *Doberstein v. Kijakazi*, No. CIV-19-171, 2021 U.S. Dist. LEXIS 179902, at *9 & n.3 (E.D. Okla. Aug. 31, 2021) (unpublished) (24,000 jobs), *R. & R. adopted*, 2021 U.S. Dist. LEXIS 179192 (E.D. Okla. Sept. 20, 2021) (unpublished); *Bess-Beasley v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-358, 2019 U.S. Dist. LEXIS 44369, at *11–12 (E.D. Okla. Mar. 19, 2019) (unpublished) (25,000 jobs); *Sly v. Berryhill*, No. CIV-17-781, 2018 U.S. Dist. LEXIS 71187, at *9 (W.D. Okla. Apr. 25, 2018) (unpublished) (32,000 jobs); *Varela v. Berryhill*, No. CIV-17-650, 2018 U.S. Dist. LEXIS 35367, at *16 (W.D. Okla. Mar. 5, 2018) (unpublished) (23,201 jobs).

## RECOMMENDATION

The undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision. The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[52]

DATED this 8th day of January, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[52] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).